I JAMES L. CANNELLA, Judge.
Plaintiff, Ochsner Health Plan, Inc. (OHP), appeals from the trial court judgment denying its request for a permanent injunction against the Defendant, KeyClick Outsourcing, Inc. (KeyClick), to stop Key-Click from continuing arbitration proceedings against Ochsner. For the reasons which follow, we affirm.
Steven Greenstein, president of Advanced Medical Systems, Inc. (AMS), provided data processing services to OHP at varying rates. AMS was looking for a guaranteed volume of business and OHP was looking for a better rate. The parties entered into a contract on or about July 17, 2000 which provided that AMS would transfer data from medical claims submitted to OHP into an electronic format that could then be downloaded into OHP’s computer system. The contract provided the compensation plan for the work AMS was doing for OHP and contained an assignment clause that provided:
Contractor shall not assign or transfer this Agreement or any interest or obligation herein by operation of law or otherwise without the prior written consent of OHP, provided that Contractor may assign the Agreement to any successor entity.
The contract also contained an arbitration clause in the event of a dispute or controversy between the parties.
UNear the end of 2000, Greenstein testified that he became aware that there were other companies with the same or similar name as AMS. So, he decided to change the name of the company from AMS to KeyClick. Greenstein was the sole shareholder of KeyClick. In January of 2001, Greenstein notified all of his AMS customers that he had changed the name of the company to KeyClick. The physical location of the business did not change, the owner/manager did not change, the pro *1288 cess did not change and the billing rates did not change. Greenstein testified that in his mind it was only a name change.[1]
OHP did not dispute that it received the name change notification and it made no inquiry regarding the notification. OHP changed the name of the company in its computer and all further billing, invoices, checks and correspondence referenced KeyClick. In some exhibits, it was shown that OHP referred to the OHP AMS agreement as the contract “between OHP and KeyClick .” OHP continued to do business with KeyClick under the terms of the OHP-AMS contract and attempted to invoke various contractual provisions regarding the payment schedule that operated in OHP’s favor. It was at this point, when OHP reduced payments based on its interpretation of the contractual provisions, that KeyClick invoked the arbitration clause. The arbitration process began in the early part of 2002. Then, in June of 2002 OHP began to question KeyClick’s right to force arbitration because “Key-Click” was not a signatory to the contract containing the arbitration clause. On July 3, 2002, OHP filed the instant suit to stop the arbitration proceedings through a pleading entitled Original Petition for Declaratory and Injunctive Relief.
Trial was held on August 22, 2002, following which the trial judge ruled in favor of KeyClick. Essentially, the trial court found that OHP was aware of the |4“name change” or transfer of business from AMS to KeyClick and it voiced no objection. Moreover, OHP continued to do business with KeyClick, referencing KeyClick on invoices, checks and letters, referred to the OHP AMS agreement as the contract between “OHP and KeyCliek,” and, most importantly, utilizing the provisions of the agreement that worked in OHP’s favor. In considered reasons for judgment, the trial court stated, in pertinent part:
The testimony was that perhaps the principle of A.M.S. thought that this was merely a name change. Perhaps he says that he thought that Keyclick, quote unquote, “absorbed A.M.S.” Actually it appears that that is an accurate layman’s term, that is, that Keyclick absorbed A.M.S. By that, basically the intent of this apparently was it was a tax free transfer of all assets.
Upon close questioning the principle of both entities testified unequivocally that it is his understanding that all assets and liabilities of A.M.S. are now assets and liabilities of Keyclick; that as of the time Keyclick began operation A.M.S. ceased operation, A.M.S. became an inactive corporation, all though [sic] of course, it was still listed active by the Secretary of State and not dissolved, as frequently occurs.
[[Image here]]
Very importantly, on August 6th of '01 Barbara Crowley on behalf of O.H.P. signed a purchase order number B10083, which was intended, it states “As per our signed agreement with Key-click, our payment terms are net 30 days. Invoices must reference this blanket P.O. number B10083. All invoices are to be reviewed by Diane Howarth. To save administration cost, vendor is instructed to bill O.H.P. on a weekly basis.”
*1289 Above the same purchase order number B10083 states, reference ACA2000145, which is the contract in question, period of performance 7/1/01 to 7/31/02.
[[Image here]]
Now addressing the argument of O.H.P., that clause 5.5 of the contract which states, quote, “assignment by contractor. Contractor shall not assign or transfer this agreement or any interest or obligation herein by operation of law or otherwise without the prior written consent of O.H.P., provided that the contractor may assign this agreement to any successor entity.”
This says two things: One, no assignment or transfer without the prior written consent of O.H.P. O.H.P. [KeyCliek] in effect contends every time it [OHP] signed an invoice and paid thereon, and that was an acceptance of the contract. When they signed the first invoice after they had made the computer changes to | sKeyclick, they in essence were signing a prior written consent that Keyclick would continue to operate under the original contract, and thereafter, through the purchase order.
Two, is Keyclick the successor corporation of A.M.S.? The testimony is that, and the documentation reflects that the intent of this transfer was in deed a seemless [sic] offer of 100 percent of the assets and liabilities of A.M.S. to Key-click. That’s the only way you get a tax free transfer, and therefore the evidence is belied by noting that A.M.S. stopped operating when Keyclick started operating, so Keyclick is the successor corporation to A.M.S. A.M.S. stopped, Key-click started.
[[Image here]]
Most importantly however, O.H.P. when it engaged in its accounting resolution, internal accounting resolution of its disagreement with Keyclick, used the contract to operate to the detriment of Keyclick.
Thereafter O.H.P. is estopped from denying the terms and conditions of the contract, including the arbitration clause, because O.H.P. used the very terms and conditions of the contract to engage in self help to the detriment of Keyclick, forcing Keyclick into a litigation posture.
Therefore the Court finds that the contract continued to properly operate, the contract was accepted and renewed by O.H.P. after the change to Keyclick, and O.H.P. used the contract to the detriment of Keyclick to its own benefit, and the arbitration clause applies.
Based on the above reasons, the trial court rendered judgment on September 3, 2002 denying the petition for injunctive relief and finding the petition for declaratory judgment moot. It is from this judgment that OHP appeals.
On appeal OHP assigns two errors. First, OHP argues that the trial court erred in permitting KeyCliek to enforce the arbitration clause of the OHP AMS agreement because KeyCliek was not a signatory to the agreement and had no rights under the agreement. OHP also argues that the trial court erred in finding that equitable estoppel applied, preventing OHP from contesting KeyClick’s right to enforce the arbitration clause.
KeyCliek counters that the trial court judgment was correct on several grounds. First, the change from AMS to KeyCliek was, in actuality, nothing more than a name change. The companies both had the same president, location, |fiequipment, employees, and duties. The only difference between the two was the name. Sec *1290 ond, OHP consented to the transfer of the contractual obligations from AMS to Key-Click by changing the name in their computer to KeyCliek, invoicing KeyCliek, referring to the contractual agreement as that between OHP and KeyCliek and taking advantage of the provisions of the agreement that benefited OHP. Third, the OHP-AMS contract expressly allowed the assignment of the contract by AMS to a “successor entity”, which KeyCliek was. KeyCliek took over all the obligations, duties, assets and liabilities of AMS and when KeyCliek commenced operation, AMS ceased operation. Finally, in the alternative, OHP is estopped from denying the terms of the arbitration clause because OHP relied on provisions of the contractual agreement that worked in its favor against KeyCliek and, therefore, by accepting and relying on the contractual agreement to its benefit, it is estopped from contesting other provisions of the agreement that it doesn’t like.
After considering the record, briefs and argument in this case, we find no error in the trial court ruling. Based on the facts, as found by the trial court, OHP expressly consented in writing to the amendment of the agreement between them, changing the “Contractor” from AMS to KeyCliek, as provided in paragraph 5.15 of the agreement. There were several examples of this consent, but, the most clear was the signed purchase order of August 6, 2001, where Barbara Crowley, on behalf of OHP, signed the purchase order which made reference to “our signed agreement with Key-Click” and was numbered B10083, with the reference ACA2000145, which is the contract in question. Additionally, OHP’s consent or acquiescence in maintaining the agreement with KeyCliek instead of AMS was evidenced by its continuing to do business with KeyCliek without objection, and its reliance on the contractual provisions that benefited it. The two companies, AMS and KeyCliek, were so closely related, owned by the same person, run by the same person, in the same location, with the same equipment, by the same |7employees, with one commencing at the same time the other terminated, that we find that one was in reality the alter ego of the other and they were essentially the same company with only a name change.[2]
OHP seems to rely, in support of its position that KeyCliek cannot enforce the arbitration clause of the agreement, on the lack of a written assignment of the OHP-AMS agreement to KeyCliek. However, for the reasons stated above, we do not find that dispositive of KeyClick’s rights. Rather, as found by the trial court, Key-Click has become the “Contractor” in the agreement, a party to the agreement by the express written consent of OHP.
Accordingly, for the reasons stated above, we find no error in the trial court ruling denying the injunctive relief and finding the petition for declaratory judgment moot. The judgment is affirmed with costs of appeal to be paid by OHP.
AFFIRMED.

. Greenstein testified that he wanted the AMS name changed so he contacted his father in Florida, who handles the legal work for him. His father accomplished the “name change” by creating a second corporation named Key-Click. The trial court expressly did not make credibility determinations, but it is noted, even though contested, that transfer documents from one corporation to the other of the OHP-AMS contract were belatedly produced.

. AMS and KeyCliek were separately incorporated companies. However, because of the extensive intermingling of all aspects of each company, their separate status was subject to being pierced.